RADLOFF *v.* RUGGLES MOTOR TRUCK CO.

1. EVIDENCE — FRAUD — TESTIMONY OF SIMILAR TRANSACTIONS ADMISSIBLE AS BEARING ON CREDIBILITY AND INTENT.

In a suit for the cancellation of certain notes given for the purchase of stock of defendant corporation, on the ground of fraud by defendant's agent in procuring them, testimony by other purchasers of stock in plaintiffs' neighborhood that they had been defrauded by the same agent in a manner similar to that in which plaintiffs had been defrauded, *held*, admissible for its bearing upon the credibility of said agent and his intent to defraud.[1]

2. FRAUD—EVIDENCE—TESTIMONY WEIGHED IN LIGHT OF SURROUNDING CIRCUMSTANCES.

When it is claimed that the execution of written instruments was procured by fraud, and the representations relied on to establish it are denied, the court, in its effort to determine wherein the truth of the matter lies may weigh the testimony submitted in the light of the surrounding circumstances.[2]

3. SAME—FINDING OF FRAUD JUSTIFIABLE.

The finding of the court below that a fraud was perpetrated upon the plaintiffs in obtaining from them one of the notes in question, and that such fraud vitiated the entire contract, *held*, justified by the record.[3]

4. SAME—DECREE MODIFIED.

Where one of the notes secured from plaintiffs by defendant by fraud had been discounted by a bank which the court below found was a holder in due course, although equity requires that plaintiffs be protected from making payment thereof or reimbursed if payment be enforced, the court was not warranted in decreeing that defendant pay the amount of it to plaintiffs until and unless payment had been made by them, and, on appeal, the decree is modified in this respect.[4]

[1]Fraud, 27 C. J. § 198; Witnesses, 40 Cyc. p. 2581; [2]Cancellation of Instruments, 9 C. J. § 195; [3]Id., 9 C. J. § 195; [4]Id., 9 C. J. § 210 (1926 Anno).

5. CORPORATIONS—VIOLATION OF PERMISSION TO SELL STOCK—PUR-
POSE OF REQUIRING CASH SALE.

  Since the purpose of the securities commission, in requir-
    ing, in its permission to sell the stock of defendant
    corporation, a cash payment on the sale of stock, was that
    it might have funds to carry on its business, said purpose
    was accomplished by the discounting of a note given for
    the purchase price of stock, and therefore was not a viola-
    tion of the terms of said permission, although no cash
    was actually paid by the purchaser.[5]

6. COSTS—MODIFICATION OF DECREE.

  Where appellant could have protected itself without modi-
    fication of the decree of the court below, costs will be
    allowed against it, although the decree is modified, on
    appeal.[6]

Appeal from Huron; Tappan (Harvey), J., presid-
ing.   Submitted October 9, 1924.   (Docket No. 61.)
Decided December 10, 1924.

Bill by August Radloff and another against the
Ruggles Motor Truck Company for the cancellation
of certain notes on the ground of fraud.   From a de-
cree for plaintiffs, defendant appeals.   Modified and
affirmed.

*Wilbur J. Beach* (*Watson Beach*, of counsel), for
plaintiffs.

*O'Keefe & O'Keefe*, for defendant.

SHARPE, J.   Plaintiffs are husband and wife.   They
reside upon a farm in Huron county.   Defendant is
a corporation, organized in the State of Delaware.
Its business operations in this State are conducted in
the city of Saginaw.   Its board of directors consists
of prominent business and professional men living in
that city and its vicinity.   On June 23, 1922, DeVere
Kirby, an agent and stock salesman of the defendant,
secured from plaintiffs an agreement to purchase 50

[5]Corporations, 14 C. J. § 818 (1926 Anno); [6]Costs, 15 C. J. § 618.

shares of the 7 per cent. cumulative preferred stock of the corporation, with par value of $100, and 50 shares of the common stock, of no par value, but fully paid and nonassessable, for the sum of $5,500, payable as follows:

"$2,750 note......dollars cash, the receipt whereof is hereby acknowledged, and the balance of $2,750 note.........dollars six months after date until the full purchase price shall have been paid."

(The peculiarity of the above language is explained by the fact that a printed form with blanks to be filled in was used.)

The agreement provided that the stock should be delivered when the payments provided for therein were made in full. Both of the notes were signed by the plaintiffs and delivered to the agent. One of them was made payable to the order of "myself," bore interest at 7 per cent. until paid, and bears the indorsement "August C. Radloff." The other was payable to the order of the defendant, due 6 months after date, with interest after maturity. On the execution of the agreement and notes, the agent gave to plaintiffs a written receipt, worded as follows:

"No. 2085.          Saginaw, Mich., June 23rd, 1922.
  "Received of August C. Radloff and Clara L. Radloff $................two notes................dollars ....................purchase price of 50 shares preferred stock 50 shares common stock balance due ....................to be paid in six months.
                    "RUGGLES MOTOR TRUCK CO.
                              "By D. J. KIRBY,
                                   "Sales Agent."

On June 28, 1922, the defendant wrote plaintiffs confirming the contract entered into by its agent. The note payable to the order of "myself" was at once taken by the agent to the State Bank of Frank W. Hubbard & Company, at Bad Axe, and, without further indorsement, discounted by him. He received there-

for a certificate of deposit, the amount of which is not stated, which was afterwards cashed by defendant. On receiving notice from the bank that the note discounted by it was due and must be paid, and from the defendant that the note it held was due, plaintiffs filed this bill. In it they allege that they were induced to sign the contract and notes by the fraudulent representations of defendant's agent, and they ask that they be canceled and plaintiffs relieved from any liability thereunder. In an amendment to the bill, plaintiffs aver that the sale of stock was made in violation of the terms imposed by the securities commission in the order permitting its sale in this State. The defendant in its answer denied the charges of fraud, and in its cross-bill asked that the contract be confirmed as a binding obligation, and that it have decree for the amount of the note executed by plaintiffs and then held by it.

The trial court found that defendant's agent had been guilty of the fraud charged in procuring the execution of the contract and notes, and decreed that the note made payable to the company be canceled and delivered to plaintiffs. The decree also provided that defendant should procure the delivery to plaintiffs of the note held by the bank within 30 days or, in default thereof, should pay to plaintiffs the amount thereof, including interest. The defendant appeals.

While plaintiffs deny that they knowingly signed the subscription agreement, we have no doubt that it as well as the notes were signed by them. The writings were all signed in plaintiffs' home. Kirby secured the services of John L. Hoffman, a deputy sheriff of the county, to assist him in making sales. For such service Hoffman received a commission of 2 per cent. on the purchase price of the stock sold. The plaintiff August Radloff was at work in a field when they arrived. After introducing Kirby, Hoffman said to Radloff that "he had stock in the company

himself, and looked upon it as a wonderful opportunity." He also gave him the names of some others in the vicinity who had already bought stock. Kirby had theretofore secured a list of farmers and had submitted it to Mr. Ryan, the vice-president of the Hubbard bank in Bad Axe, and had him indicate on it the names of those whose notes he would be willing to discount and the amounts thereof. On the literature exhibited were pictures of several of the officers and directors of the company, men of prominence in Saginaw and Huron counties, whose standing and integrity were known to plaintiffs. When the proposition to purchase stock was put up to August, he expressed his inability to buy. Hoffman testified that Kirby then said, "we don't want your money, we don't want your farm, all we want is your credit, * * * all we want is for you to loan them your credit." Radloff and Kirby then went into the house to see Mrs. Radloff. Radloff testified that when hesitating about giving a note, although told that they would not be bound by it, Kirby said:

"If we could not pay it at any price, can't even pay the interest, to let it run 30 days past due and we will absolutely be out of it, our note would be sent back and we won't be held responsible for it at all."

That when he and his wife concluded to execute the note for $2,750, Kirby had another one ready and said:

"You have got to sign this one. It is supposed to be an office copy, held at Saginaw, and he got us to sign that, so he said we will have this copy note so we keep a record of this one at Bad Axe."

That he asked if the note first signed was to be sold at Bad Axe, and Kirby said—

"no, it was going to be held in the Hubbard bank here for collection, if I wanted to make any payment I can go to the Hubbard bank and make my payment there,

I didn't have to go to Saginaw. * * * He said every time I made a payment at the Hubbard bank at Bad Axe the same amount would be added on the copy note at Saginaw in the office, and after I got this one paid in Bad Axe in the Hubbard bank that I would have a share in the Ruggles Truck Company worth $5,500."

Radloff's testimony as to what Kirby said while in the house, and particularly as to what he said about the "copy note," is fairly corroborated by that of Mrs. Radloff. Both were submitted to a very severe cross-examination, and, while they were not in accord as to some statements and denied that they knowingly executed the subscription agreement, we are unable to conclude that there was any intentional false swearing on their part. There was also proof that Kirby had secured two notes from other purchasers of stock residing in the same community where but one was intended to be given. Stanley Kleida testified as to similar statements made to him as to his liability on his note. He also testified that after he had signed one for $550 Kirby—

"wanted me to sign another paper and I did sign it and I asked him what for that is, he said, that go to the company."

That he afterwards got notice of two notes he had given, each for $550, one payable to "myself" and the other to the defendant.

Harry Young, another farmer to whom Kirby sold stock, testified that he signed two notes, and that Kirby said—

"the one they would hold at my bank and the other they would take to Saginaw, that is his very words he told me,"

and that the first he knew that liability was claimed on both notes was when he got notices to pay them.

While this testimony and other of somewhat similar import was received over defendant's objection, it was

clearly admissible under our holdings in its bearing upon the credibility of Kirby and his intent to defraud. *Cook* v. *Perry,* 43 Mich. 623; *Dayton* v. *Monroe,* 47 Mich. 193; *Stubly* v. *Beachboard,* 68 Mich. 401; *French* v. *Ryan,* 104 Mich. 625; *Shrimpton & Sons* v. *Rosenbaum,* 106 Mich. 68; *Morain* v. *Tesch,* 214 Mich. 699; *Bay State Milling Co.* v. *Saginaw Baking Co.,* 225 Mich. 557.

The plaintiffs testified that at that time they were the owners of 80 acres of land, and that August owned an additional 80, the value of the entire 160 acres being about $18,000, on which there was an incumbrance of about $13,000. Conceding that they also had the stock and implements usual to farming, it is apparent that the subscription agreement and notes obligated them to pay, six months thereafter, a sum almost equal to their net worth. Courts of equity have no power to set aside contracts because improvidently entered into. Written instruments, when executed voluntarily and understandingly, must be enforced. But when it is claimed that the execution of such instruments is procured by fraud, and the representations relied on to establish it are denied, the court, in its effort to determine wherein the truth of the matter lies, may weigh the testimony submitted in the light of the surrounding circumstances.

The trial court heard and saw the plaintiffs and their witnesses. We find nothing to indicate that they were not testifying truthfully, and he saw nothing to reflect on the truth of their statements. After a careful consideration of the entire record, including the denial of Mr. Kirby in his deposition taken in California, where he now resides, we cannot but agree with him that a fraud was perpetrated upon the plaintiffs in obtaining from them the note for $2,750, payable to the order of the defendant, and that such fraud vitiated the entire contract. The proofs

supporting this charge are quite as convincing as those submitted in the recent cases of *Curwood* v. *Insurance Co.*, 226 Mich. 573, and *Miller* v. *Savings Bank*, 227 Mich. 316.

We have not overlooked the fact that defendant, soon after the writings were executed, wrote plaintiffs confirming the sale of stock to them, and that plaintiffs in no way repudiated their act in signing the subscription agreement until demand for payment of the notes had been made.    While plaintiffs had but little education, they were intelligent and make no claim that they could not understand the meaning of ordinary English words.    Their explanation of this, as well as the receipt which stated they had purchased 50 shares of each kind of stock, is that Kirby stated to them that if they paid the note, first signed, for $2,750, they would receive the $5,500 worth of stock. If they so understood at the time the receipt was given, the letter of confirmation might have been read without challenging their attention to the fact that the defendant claimed they had obligated themselves to pay par value for the 50 shares of each kind of stock.

It is urged that the part of the decree requiring defendant to procure the delivery of the note held by the bank for cancellation or, in default, the payment of the amount thereof with interest to plaintiffs, is not warranted.    The trial court held that the bank was a holder of the note in due course.    Had plaintiffs paid it before decree, they would have been entitled to a decree for the amount so paid.    Equity requires that they should be protected from making such payment or reimbursed if payment be enforced.    The defendant may protect itself under the decree by retiring it. We think a legal obligation rests upon it to do so. The court, however, was not warranted in decreeing that defendant should pay the amount of it to plaintiffs until and unless payment had been made by them. The decree may, at the option of defendant, be modified

to provide for payment of the money into court, to be turned over to plaintiffs on production of the note and evidence of its payment.   The record may be remanded to permit this to be done under the supervision of the court if deemed necessary.

Plaintiffs also claim, and their counsel are very insistent in urging its consideration, that defendant received no cash on the sale to plaintiffs and thereby violated the permission to sell its stock granted by the securities commission.   The note given by plaintiffs was at once discounted by defendant's agent and its proceeds placed to the credit of the company.   The purpose of requiring a cash payment on the sale of stock of a corporation is to secure to it funds to carry on its business.   This purpose was accomplished when the note was discounted, provision for which had been theretofore made.   We find no such evasion of the order of the commission as would invalidate the sale.

The decree is affirmed, with such modification as defendant may desire, consistent with what has been said.   As defendant may fully protect itself without modification of the decree, we feel constrained to allow costs to appellees.

CLARK, C. J., and MCDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.