BENTLEY *v.* SHIFFLET, CUMBER & CO.

1. CORPORATIONS—FRAUD—PLEADING—RESCISSION.

In an action to recover money alleged to have been obtained by the fraudulent sale of corporate stock, where the declaration alleged that as soon as plaintiff learned the facts he tendered the return of the stock and asked

---

[1] Corporations, 14 C. J. § 1089.

defendant to return to him the money so paid, but that defendant refused to accept return of the stock or to repay the money so paid, it clearly charged rescission, and plaintiff was entitled to proceed upon that theory in the action.

2. SAME—PROOF—QUESTION FOR JURY.

Where the declaration charged fraud in the sale of the stock, and substantial proof was offered to establish it, the trial court properly submitted said issue to the jury.

3. TRIAL—CONDUCT OF COURT—JURY NOT COERCED.

Where the jury, after deliberating for six or seven hours, returned to the court room and announced their inability to agree, whereupon the court reminded them of the time consumed in the trial, said it was highly desirable they agree if they could do so conscientiously, said to a woman juror, in reply to her statement that there was no use in retiring, that hers was not the right attitude for a juror, and instructed them further as to the issues and again sent them out, after which they soon returned with a verdict, there was no error in the incident; the jury not being unduly influenced or persuaded to agree upon a verdict.

4. SAME—FRAUD—INQUIRY INTO CLAIM NOT RESTRICTED.

Defendant's complaint that the trial court did not allow full inquiry into its claim that it relied upon the truth of information furnished it by its principal, *held*, upon the record, to be without merit.

5. APPEAL AND ERROR—EVIDENCE—ISSUES.

Defendant's complaint that its proof of the ownership of certain patents by its principal was offered and rejected, is without merit, where the record shows that defendant did not claim they were so owned, denied making such representation to plaintiff, and claimed that plaintiff knew they were not so owned.

6. EVIDENCE — FRAUD — TESTIMONY OF SIMILAR REPRESENTATIONS ADMISSIBLE TO SHOW INTENT.

Testimony by witnesses that similar representations, charged by plaintiff to be false, were made to them to induce them to purchase some of the same stock, was properly admitted where limited to the question of good

---

[2]Corporations, 14 C. J. § 1094; [3]Trial, 38 Cyc. pp. 1853, 1854; [4]Corporations, 14 C. J. § 1090; Fraud, 26 C. J. § 51; [5]Appeal and Error, 4 C. J. § 1661; [6]Evidence, 22 C. J. § 836.

faith, honesty, and belief; the court stating that it had no tendency to prove or disprove fraud in the instant case, except as it showed dishonest intent on the part of the salesman.

7. APPEAL AND ERROR—CROSS-EXAMINATION.
   Complaint of defendant's counsel that they were unduly restricted in cross-examination of various witnesses, *held*, without merit.

8. EVIDENCE—UNAUTHENTICATED PAPERS PROPERLY EXCLUDED.
   The offer in evidence of an exhibit which defendant claimed tended to show ownership of certain patents was properly rejected, where it consisted of several numbered and several unnumbered loose typewritten sheets without any semblance of authority or authenticity, and was legal evidence of nothing.

9. TRIAL—INSTRUCTIONS.
   Objections to the charge of the court, which was full and complete, and on the whole fairly and correctly submitted the issues to the jury, are without merit.

Error to Wayne; Weimer (George V.), J., presiding. Submitted February 3, 1927. (Docket No. 106.) Decided April 1, 1927.

Assumpsit by George N. Bentley against Shifflet, Cumber & Company for money paid on the fraudulent sale of corporate stock. Judgment for plaintiff. Defendant brings error. Affirmed.

*MacKay, Wiley, Streeter, Smith & Tucker,* for appellant.

*Munro & Powell* (*Charles F. Meyler* and *Leo F. Covey,* of counsel), for appellee.

SNOW, J.   The plaintiff in 1919 was conducting a general hardware store in the little town of Elm in Livonia township, Wayne county. There he was approached by one Frank K. Lane, a salesman for the

---

[7]Appeal and Error, 4 C. J. § 2797; [8]Evidence, 22 C. J. § 1138; [9]Trial, 38 Cyc. pp. 1778, 1779.

defendant corporation, who solicited him to purchase stock in the Detroit Transmission Company, a Delaware corporation, which had obtained authority from the Michigan securities commission, and had then contracted with the defendant as selling agent, to sell its stock in this State.

Plaintiff, at different times covering a period of the first six months in 1920, bought and paid for $750 of the stock offered.    Claiming fraud and misrepresentation on the part of defendant and its agents in making the sales, plaintiff, in January, 1924, commenced his action in the Wayne county circuit to recover the amount he had paid for the stock.

Much discussion of claimed error will be rendered unnecessary if at the outset we determine the exact character of the action made by the pleadings in the case.    Defendant's counsel throughout proceed upon the theory that the declaration simply sounds in tort for fraud and deceit, and is not one in assumpsit based upon a rescission of the contract of purchase and a tender back of the stock.    Plaintiff, on the contrary, insists that the matters alleged in the declaration are sufficient to sustain a verdict on the theory of rescission and the right to recover the purchase price, because he was fraudulently induced to buy.

The declaration at some length sets forth in detail the representations made by defendant which induced the purchase of the stock.    It charges that these representations were false, but were believed and relied upon by him, otherwise he would not have invested. The declaration then proceeds:

"Plaintiff says that said stock so received by him from the Detroit Transmission Company, as a consideration for the payment of said sum of money so paid by him to the Detroit Transmission Company in reliance upon the representations aforesaid, was at the time of said representations and now is of no value; that as soon as the plaintiff became acquainted with

the true facts, as hereinbefore set forth, and on, to wit, the 28th day of February, A. D. 1923, he tendered the return of said stock to said defendant and to said Detroit Transmission Company and asked defendant for a return of the moneys so paid out by him in reliance upon said fraudulent representations, but that said defendant refused to accept the return of said stock, or to repay said moneys so paid by plaintiff to said defendant and to said Detroit Transmission Company, or any part thereof."

This allegation was supported by the proof. The declaration clearly charges rescission and affords the right to proceed upon that theory in the trial of the case. Plaintiff recovered judgment for $871.15, and defendant brings error.

Several claims of fraud were made by the plaintiff, principal of which was that Lane represented to him that the Detroit Transmission Company owned the patents necessary for the manufacture and sale of the transmission it was to produce, one so designed that the gears of an automobile could be shifted from the steering wheel, and one which also possessed other advantages over transmissions then in common use. Plaintiff also claimed that it was represented to him that orders for several thousand transmissions had been already received by the company; also that no officers of the corporation were receiving salaries; and that Lane represented that he himself was buying all the stock he could afford to buy and was borrowing money for such purpose.

Plaintiff also claimed upon the trial that any agreement he made with defendant under which money was paid for this stock was illegal and void because in contravention of the so-called "blue sky law," in that the commission paid to defendant, the selling agent, was in excess of the amount prescribed by the order of the securities commission; that the stock was sold at a price above par in violation of the plan set forth in the application for the license to sell. But this

claim did not control the disposition of the case in the lower court. It was in fact not passed upon at all, nor is it necessary for this court to determine here.

Taking in order, as near as may be, the claims of defendant,

1. Should the court have directed verdict in its favor? While the declaration charges that the sale of the stock was not regularly approved by the securities commission, it also fully charges fraud in the respects hereinbefore pointed out, and substantial proof was offered to establish it.

Plaintiff testified:

"*Q.* Did he tell you anything else in regard to the Detroit Transmission Company stock?

"*A.* Continuing Mr. Lane's conversation to me, at the time I bought my first stock, he informed me that the Detroit Transmission Company owned a patent to this transmission, and that thereby, of course, no other company could compete with them; that several companies had investigated this patent, among them the Federal Motor Truck Company, and the Federal Motor Truck Company were very much pleased with this transmission; had tried it out and were so pleased they had given orders for several thousand of these transmissions which they wished to use on their trucks as soon as the Transmission Company could manufacture them; that the Pierce Arrow Company had also investigated this transmission and that they wished to adopt some certain portion of it and they would use this transmission and pay a royalty for the same. These three or four facts were the main facts which induced me to buy stock of the Detroit Transmission Company."

There was much additional proof in corroboration, which clearly made a question of fact which the court fully and fairly submitted to the jury.

2. It is strenuously urged by defendant that the trial judge practically coerced the jury to agree upon a verdict. After the jury had been deliberating for six

or seven hours they returned to the court room, and, through the foreman, announced their inability to agree. The court reminded them of the fact that a week had been consumed in the trial and that it was highly desirable they agree if they could do so conscientiously. The foreman insisted it was impossible, as did other jurors, and the court said, in reply to a statement by a lady juror that there was no use in retiring, that hers was not the right attitude for a juror. The court also instructed them further as to the issues and the law applicable, and again sent them out. They soon returned with a verdict.

In denying a motion for new trial, Judge Weimer had this to say:

"It has been the practice in my circuit for a long time, and that practice was adopted many years ago in the form of certain printed instructions, with which I was favored, by the Wayne county judges, and I did not feel the evening this jury asked those questions, nor do I feel now, that anything was said that should not have been said to them upon the subject of the propriety, and indeed, the duty of each and every juror to discuss freely and frankly his views with his fellow jurors. The jury were told that it was their duty to reconcile their differences in opinion if they could conscientiously do so; on the other hand, that it was the duty of each and every juror not to surrender or abandon his or her conscientious belief merely for the sake of reaching a verdict, and being with the majority.

"If what the court did say on that occasion was proper, then no complaint should be made of it simply because, in the light of such instruction, the jury were able to and did reach a verdict within a comparatively short time thereafter. If the court's instructions on nondiscussion were proper, then the only criticism that should be made is, that they had not been given earlier and could have saved the jury several hours deliberation. The fact is that the court had intended to make the same statements to the jury in connection with the general charge, and inadvertently overlooked it. It may be that, had I instructed them as I intended, the verdict would have been reached much earlier. In

other words, no complaint should be made simply because a verdict was reached quickly thereafter."

We must agree with the learned trial judge, and we do not believe the jury was unduly influenced or persuaded to agree upon a verdict.     We find no error in the incident.     The case is not parallel with *People* v. *Strzempkowski*, 211 Mich. 266 (10 A. L. R. 420), and cases there cited, relied upon by appellant.

3. The third group of assignments has to do with admission or rejection of testimony.

(*a*) Defendant complains that the court did not allow full inquiry into its claim that it relied upon the truth of information furnished it by its principal, Detroit Transmission Company, citing syllabus in *Krause* v. *Cook*, 144 Mich. 365:

"If a person receives information from others, and believes it, and repeats it, explaining that he had no personal knowledge, he is not guilty of fraud."

But the representations to plaintiff were not thus made.     Neither the seller nor the buyer testified they were.     The salesman did not explain to plaintiff that he had no personal knowledge but was simply passing information on from hearsay.     Mr. Cumber, defendant's vice-president, without objection was permitted to testify:

"*Q*. I will ask you, Mr. Cumber, whether or not all the information of every kind, character and nature that you obtained relative to the condition of the Detroit Transmission Company was furnished you by the company, the Detroit Transmission Company, by the officers and directors of the company?

"*A*. Yes.

"*Q*. State whether in some regards, or nearly all regards, you tried to make careful, personal examination?

"*A*. Yes.

"*Q*. Did you believe what the officers and directors of the company told you?

"*A*. I did.

"*Q.* You relied upon them?
"*A.* Yes."

And the court instructed the jury in the following language favorable to defendant:

"If the defendant company, before selling the stock of the Detroit Transmission Company, made a proper investigation and received the information and passed on the information which its agents and officers received, honestly and in good faith, believing it to be true, the defendant company would not be liable, no matter whether the plaintiff was deceived in his purchase or not.

"The defendant company undertook to put these stocks on for sale for the Detroit Transmission Company, and if the defendant company, through its proper officers and agents, secured in the best way possible, or in the usual manner, such information as it could get; if it sought to obtain that information in a fair, reasonable manner and simply passed that information on, in good faith, honestly believing it to be true, that is all there is to it; then the defendant is not liable."

In view of the above, we feel these assignments to be without merit.

(*b*) Defendant asserts that proof of ownership of the patents themselves in the Detroit Transmission Company was offered and rejected upon the trial. Our attention is directed to no such offer, nor do we find anything of the sort in the record. In so stating we are mindful of defendant's exhibit 7, which will be later referred to. It does not seem to have been defendant's theory that the Transmission Company ever owned the patents, but rather that it never represented that it was the owner. In the brief of counsel for defendant, it is said:

"A statement was made by Mr. Douthitt at the second annual meeting of the stockholders to all of the stockholders that the Detroit Transmission Company did not own the patents and that in the event the Detroit Transmission Company did not manufacture

the transmission, the patents would revert. In a statement of the second annual meeting which was sent out by the corporation and received by the plaintiff the patents were not set up as an asset of the company. The property of the Detroit Transmission Company which was transferred to the Detroit Accessories Corporation was worth between eighty and one hundred thousand dollars."

On the trial, too, defendant attempted to show that plaintiff knew that Detroit Transmission Company did not own the patents. The record justifies the court in the statement "that it was plaintiff's theory and claim that the Detroit Transmission Company did not own the patents. I take it there is no dispute about that. They did not."

(c) We have examined the testimony of witnesses Moore, Wolfram, and Ott, who testified to similar representations having been made to them to induce purchase of stock in this corporation. Their testimony was admitted, as stated by the court, on the "question of good faith, honesty and belief;" that it has "no tendency to prove or disprove fraud in the case of plaintiff except as they show dishonest intent on the part of the salesman." Defendant insists such testimony should have been excluded. We cannot agree. The contrary has been held in *Radloff* v. *Ruggles Motor Truck Co.*, 229 Mich. 145, and cases there cited. *Stowe* v. *Mather*, 234 Mich. 385, is not in point, since the testimony in the instant case was not used as substantive proof of the claimed misrepresentations to plaintiff. The court so stated when the testimony was admitted.

(d) Assignments of error, complaining that counsel for defendant was unduly restricted in his cross-examination of various witnesses, have been examined and found meritless.

4. Defendant complains that its exhibit 7 tended to show ownership of the patents. So much of said

exhibit as appears in the record justified the remark of the trial judge, as follows:

"*The Court:* There is certainly nothing in Exhibit 7 which consists of eleven numbered typewritten sheets and three unnumbered, all of them loose, typewritten M. S. without any semblance of authority or authenticity; just typewritten matter, some loose sheets of paper. The objection is sustained and the jury will disregard all that counsel has said."

The exhibit was legal evidence of nothing, and the statement of the court was justified.

5. Some instructions to the jury are complained of. We need not refer to them specifically. The charge was full and complete, and on the whole fairly and correctly submitted the issues to the jury. We find no reversible error.

The judgment is affirmed, with costs to plaintiff.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.