## ALLEN v. MICHIGAN BELL TELEPHONE COMPANY

### Opinion of the Court

1. Contracts—Freedom to Contract.

   The principle of freedom to contract does not carry a license to insert any provision in an agreement which a party deems advantageous.

2. Contracts—Freedom of Contract.

   Implicit in the principle of freedom of contract is the concept that at the time of contracting each party has a realistic alternative to acceptance of the terms offered.

3. Contracts—Unreasonable Terms—Enforcement.

   One ,who successfully extracts an agreement to an unreasonable contract term cannot insist on the courts enforcing the term on the ground that it was "freely" entered into, where the other party's choices are limited to acceptance of the terms offered or doing without and doing without is not a realistic alternative, nor can one in the name of freedom of contract be heard to insist on enforcement of an unreasonable contract term against another who on any fair appraisal was not free to accept or reject that term.

4. Contracts—Unconscionability.

   Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

5. Contracts — Unreasonable Term — Damages — Enforcement — Telecommunications.

   Contract clause which limited a telephone company's liability for damages resulting from failure to include advertising in

---

References for Points in Headnotes

[1–3] 17 Am Jur 2d, Contracts §§ 1, 8, 9, 41.
[4–6] 17 Am Jur 2d, Contracts § 192.
[7] 5 Am Jur 2d, Appeal and Error § 545 et seq.

the Yellow Pages at the agreed prices for such advertising *held*, unreasonable and unenforceable, where the parties to the advertising contract were not in positions of equal bargaining power, the telephone company's Yellow Pages were the only directory of classified telephone listings freely distributed, the contract signed by the parties was a form prepared by the telephone company and used in all subscriptions for advertising in the Yellow Pages and the contract was strictly a "take it or leave it" proposition.

6. CONTRACTS — UNREASONABLE TERM — ENFORCEMENT — PUBLIC POLICY.

An unreasonable term in a contract for goods or services will not be enforced as a matter of public policy, where such goods or services used by a significant segment of the public can be obtained from only one source, or from limited sources on no more favorable terms.

DISSENTING OPINION
QUINN, P. J.

7. APPEAL AND ERROR—COURTS—JURISDICTION.

*The Court of Appeals is without jurisdiction to consider appeals based on theories that were not raised or argued at the trial of a case and were not briefed or argued on appeal.*

Appeal from Genesee, John W. Baker, J. Submitted Division 2 December 5, 1967, at Lansing. (Docket No. 3,500.) Decided August 26, 1969. Rehearing denied October 14, 1969. Application for leave to appeal filed October 31, 1969.

Complaint by Kenneth D. Allen against Michigan Bell Telephone Company, a Michigan corporation, for damages arising from the failure to list plaintiff in the yellow pages of defendant's telephone directory. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Andrew J. Transue,* for plaintiff.

*Gault, Davison & Bowers,* for defendant.

Before: Quinn, P. J., and T. G. Kavanagh* and Levin, JJ.

T. G. Kavanagh, J. Plaintiff, an insurance agent, contracted to place several advertisements in the Flint classified telephone directory. The defendant, Michigan Bell Telephone Company, accepted the order and agreed to publish the listings in its 1963 Yellow Pages—but failed to do so. Upon plaintiff's suit for damages, the defendant Bell Telephone asserted the following clause of their contract as an affirmative defense:

"Telephone company (a) will not be bound by any verbal agreements or (b) will not be liable to advertiser for damages resulting from failure to include all or any of said items of advertising in the directories or from errors in the advertising printed in the directories, in excess of the agreed prices for such advertising for the issue in which the error or omission occurs."

Then the defendant moved for, and was granted, a summary judgment of no cause of action.

The plaintiff's appeal questions the trial court's application of this clause in granting the motion for summary judgment and, further, challenges the legality of such a clause on the grounds of public policy.

He argues that the clause in question limits the liability of the telephone company only as it pertains to damages for breach of contract, and that such a contracted disclaimer may not be read as a limitation of its liability for its own negligence. He cites as authority two Michigan cases: *Harbaugh* v. *Citizens*

* Thomas Giles Kavanagh, Justice of the Supreme Court, assigned to sit on the Court of Appeals from February 27, 1969, "until the work assigned has been completed" pursuant to Const 1963, art 6, § 4, and CLS 1961, § 600.225, as amended.

*Telephone Co.* (1916), 190 Mich 421 and *Muskegon Agency, Inc.* v. *General Telephone Company of Michigan* (1954), 340 Mich 472 and (1957), 350 Mich 41. Both the *Harbaugh* and *General Telephone* cases involved actions for an asserted breach of duty by a public utility in the area of its *public* service and they did not involve, as the present case does, a breach of duty by a public utility in its *private* service.

The defendant asserts that it is not required to provide the Yellow Pages and therefore it is to be treated as a private party and not a public utility when soliciting and contracting advertisements. The defendant further contends, that, since this is an area of *private* contract, it may lawfully require those who desire to advertise in the Yellow Pages to agree to a limitation of liability in the event of an omission or error in the Yellow Pages.[1]

---

[1] There are several cases in other jurisdictions wherein exculpatory clauses identical or similar to that involved here have been upheld. In none of these cases however, have the courts given consideration to the issue we regard as crucial *viz.* the problem of unconscionability. Several cases correctly point out that the Yellow Pages are not part of the telephone company's public duty but then go on to assume without further inquiry that the limitation clause is automatically valid under general contract law, *Baird* v. *Chesapeake & Potomac Telephone Company* (1955), 140 Md 448 (117 A2d 873); *Georges* v. *Pacific Telephone and Telegraph Company* (D Ore, 1960) 184 F Supp 571; *Smith* v. *Southern Bell Telephone and Telegraph Company* (1962), 51 Tenn App 146 (364 SW2d 952). Others emphasize the traditional sanctity of free contract without questioning whether that concept is applicable in the particular case, *Wilson* v. *Southern Bell Telephone & Telegraph Company* (La App, 1967), 194 So 2d 739, or rely on the lack of definite proof of lost profits, with only passing mention of the limitation of liability clause, *Mitchell* v. *Southwestern Bell Telephone Company* (Mo App, 1957), 298 SW2d 520; *Wade* v. *Southwestern Bell Telephone Company* (Tex Civ App, 1961), 352 SW2d 460. Many cases simply state the conclusion, that the limitation is valid, citing other cases which have done the same, *Russell* v. *Southwestern Bell Telephone Company* ED Tex, 1955), 130 F Supp 130; *Neering* v. *Southern Bell Telephone and Telegraph Company* (SD Fla, 1958), 169 F Supp 133; *Advance Service, Inc.* v. *General Telephone Company of Florida* (Fla App, 1966), 187 So 2d 660; *Federal Building Service* v. *Mountain States Telephone and Telegraph Company* (1966), 76 NM 524 (417 P2d 24).

We cannot properly resolve the questions presented by adopting the position of either of the parties without qualification. We cannot say with the plaintiff that all provisions for limiting one's liability for negligence are void as against public policy. Nor can we say with the defendant that public policy is not concerned with private contract, and therefore, a person is free to exculpate himself from liability as he may see fit.

The principle of freedom to contract does not carry a license to insert any provision in an agreement which a party deems advantageous. The public is concerned with the legality of contracts and limits the contractual freedom of private parties to legal undertakings. This public concern is manifest in the statutes and decisions of this state.[2]

Nor can we say it is against public policy for the defendant to limit its liability for its own negligence in all circumstances.[3] Such a limitation may take

In only one case was mention made of the question of relative bargaining positions. In *McTighe* v. *New England Telephone and Telegraph Company* (CA 2, 1954), 216 F2d 26, Judge Medina devoted most of his opinion to discussion of the white pages aspect of the case. After pointing out that the yellow pages involve no such public duty as is connected with the white pages, Judge Medina observed:

"If there be some disparity in the bargaining power of the contracting parties it is no more than may be found generally to exist; and the courts follow the general rule that the parties are free to contract according to their own judgment and the reasonableness of their engagements will not be entered into."

This indicates that he was aware of the unequal bargaining power argument but does not disclose what considerations or facts moved him to reject it out-of-hand.

We must conclude, therefore, that the factor of unequal bargaining power between the parties to the contract has never been fairly considered in connection with the standard limitation of liability clause in a Yellow Pages advertisement contract.

[2] *E.g.*, MCLA § 691.991 (Stat Ann 1969 Cum Supp § 26.1146[1]) and CL 1948, § 256.545 (Stat Ann 1968 Rev § 9.1725). *Weaver* v. *Ann Arbor R. Co.* (1905), 139 Mich 590; see *Henningsen* v. *Bloomfield Motors, Inc.*, 32 NJ 358 (161 A2d 69, 75 ALR2d 1), adopted in *Browne* v. *Fenestra, Inc.* (1965), 375 Mich 566, 571.

[3] *Mann* v. *Pere Marquette R. Co.* (1903), 135 Mich 210; *Weaver* v. *Ann Arbor R. Co., supra; Blazic* v. *Ford Motor Company* (1968), 15 Mich App 377, 380.

the form of a disclaimer of liability beyond a certain
amount or it may take the form of a provision for
stipulated or liquidated damages.[4]  But in all this,
public policy does insist that this, as every other
term of a contract, not be unconscionable.

Implicit in the principle of freedom of contract is
the concept that at the time of contracting each party
has a realistic alternative to acceptance of the terms
offered.  Where goods and services can only be ob-
tained from one source (or several sources on non-
competitive terms) the choices of one who desires
to purchase are limited to acceptance of the terms
offered or doing without.  Depending on the nature
of the goods or services and the purchaser's needs,
doing without may or may not be a realistic alterna-
tive.  Where it is not, one who successfully exacts
agreement to an unreasonable term cannot insist on
the courts enforcing it on the ground that it was
"freely" entered into, when it was not.  He cannot
in the name of freedom of contract be heard to insist
on enforcement of an unreasonable contract term
against one who on any fair appraisal was not free
to accept or reject that term.

There are then two inquiries in a case such as this:
(1) What is the relative bargaining power of the
parties, their relative economic strength, the alterna-
tive sources of supply, in a word, what are their op-
tions?; (2) Is the challenged term substantively
reasonable?

"Unconscionability has generally been recognized
to include an absence of meaningful choice on the
part of one of the parties together with contract

---

[4] Although the trial court referred to this provision as one for
"liquidated damages" and the briefs of both parties cite cases in-
volving liquidated or stipulated damages, inasmuch as the provision
does not even purport to anticipate or compute actual damages we
do not regard it as a valid attempt to do so.  See *Jaquith* v. *Hudson*
(1858), 5 Mich 123.

terms which are unreasonably favorable to the other party." *Williams* v. *Walker-Thomas Furniture Company* (1965), 121 App DC 315 (350 F2d 445, 449, 18 ALR3d 1297).

Thus, merely because the parties have different options or bargaining power, unequal or wholly out of proportion to each other, does not mean that the agreement of one of the parties to a term of a contract will not be enforced against him; if the term is substantively reasonable it will be enforced. By like token, if the provision is substantively unreasonable, it may not be enforced without regard to the relative bargaining power of the contracting parties.[5]

Where the contract is affected with a "public interest" a court is more likely to refuse enforcement to an exculpatory provision.[6]  Prosser has observed:

---

[5] See Ellinghaus, *In Defense of Unconscionability*, 78 Yale L J 757, 766, 767 (1969) ; *Henningsen* v. *Bloomfield Motors, Inc.* (1960), 32 NJ 358 (161 A2d 69, 84–96), and cases therein cited; and also *Richmond* v. *Robinson* (1864), 12 Mich 193; *Jaquith* v. *Hudson, supra.*

[6] "In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid.  Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics.  It concerns a business of a type generally thought suitable for public regulation.  The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.  The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.  As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.  In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.  Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." *Tunkl* v. *Regents of the University of California* (1963), 60 Cal 2d 92 (32 Cal Rptr 333, 383 P2d 441, 444–446, 6 ALR3d 693).

"The courts have refused to uphold such agreements, however, where one party is at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence. Thus it is generally held that a contract exempting an employer from all liability for negligence toward his employees is void as against public policy. The same is true as to the efforts of public utilities to escape liability for negligence in the performance of their duty of public service. A carrier who transports goods or passengers for hire, or a telegraph company transmitting a message, may not contract away its public responsibility, and this is true although the agreement takes the form of a limitation of recovery to an amount less than the probable damages. It has been held, however, that the contract will be sustained where it represents an honest attempt to fix a value as liquidated damages in advance, and the carrier graduates its rates according to such value, so that full protection would be open to the plaintiff upon paying a higher rate. The same rules apply to innkeepers and public warehousemen." Prosser, Law of Torts (3d ed), § 67, pp 457, 458.

It is not enough to say that "freedom of contract" is the founding principle of our economy, for freedom of contract is directly related to another basic principle of our economy—"freedom of enterprise". It must be recognized that freedom of enterprise became severely restricted as the giants in our industries and services overwhelmed their competition. It is neither rational nor just to contend that freedom of contract must remain static and immutable as freedom of enterprise inexorably recedes. Both concepts must adjust and adapt to the times.

The parties to this suit are not in positions of equal bargaining power. It is common knowledge that defendant's Yellow Pages is the only directory of classified telephone listings freely distributed to

all the telephone subscribers in the Flint area. It is not disputed that the contract signed by the parties was a form prepared by the defendant and used by the defendant in all subscriptions for advertising in the Yellow Pages. Nor is it argued by the defendant that the plaintiff could have bargained for different terms in the contract. It was strictly a "take it or leave it" proposition.

Under the circumstances the plaintiff had the option of agreeing to the offered terms or doing without advertising in the Yellow Pages. There being no competing directory or means of communicating with the same audience of potential customers except possibly at prohibitive (and by comparison totally disproportionate) cost, doing without in this case was not a realistic alternative. Clearly the challenged term is substantively unreasonable. It relieves the defendant from all liability—its only obligation is to return the agreed contract price paid for the service it did not perform. We have concluded that this provision is unreasonable and, accordingly, we decline to enforce it.

We believe the law in Michigan to be that, where goods or services used by a significant segment of the public can be obtained from only one source, or from limited sources on no more favorable terms, an unreasonable term in a contract for such goods or services will not be enforced as a matter of public policy.

Reversed and remanded for trial on the merits. Costs to appellant.

Lᴇᴠɪɴ, J., concurred.

Qᴜɪɴɴ, P. J., (*dissenting*). Being an appellate judge and not an appellate advocate, I must dissent. The majority opinion is based on a theory not plead-

ed by plaintiff nor raised before the trial court. Furthermore, the theory adopted by the majority opinion was neither briefed nor argued by plaintiff before this Court.

If this Court does not consider theories not presented to the trial court, *Kirby* v. *Monroe Paper Products Company* (1965), 1 Mich App 680, we could not properly reach the result of the majority opinion had plaintiff briefed or argued on appeal the theory adopted by the majority opinion. When the additional fact that plaintiff neither briefed nor argued such theory on appeal is considered, it appears to me that the majority opinion has exceeded the appellate jurisdiction of this Court.

On this record, the grant of defendant's motion for summary judgment was proper and legally correct. I vote to affirm.