2002 SD 87

**MOBILE ELECTRONIC SERVICE, INC., Plaintiff and Appellee,**

v.

**FIRSTEL, INC., Defendant and Appellant.**

**No. 21818.**

Supreme Court of South Dakota.

Considered on Briefs on Oct. 01, 2001.

Reassigned March 19, 2002.

Decided July 24, 2002.

Steven R. Nesson, Sioux Falls, for plaintiff and appellee.

Debra S. Sittig of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellant.

GORS, Acting Justice (on reassignment).

[¶ 1.] FirsTel, Inc. (FirsTel) appeals the decision of the trial court denying its motion to dismiss. FirsTel claimed that its liability to Mobile Electronics Service, Inc. (Mobile) for failure to change Mobile's phone numbers from "unlisted" to "listed" is limited by a tariff filed with the South Dakota Public Utilities Commission (PUC) and incorporated by reference in the listing contract with Mobile. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] FirsTel is one of several providers of local telephone exchange services in South Dakota. One of the services that it provides is classifying clients' telephone numbers as "business" or "residential" and "listed" or "unlisted." Mobile is a Sioux Falls business that entered into a contract with FirsTel for local telephone service.

[¶ 3.] Mobile alleges that in May of 1999, it contacted U.S. West Dex (Dex) to have Mobile's telephone numbers listed in the business white pages and to have an advertisement in the yellow pages. Dex advised Mobile that its phone numbers could not be published in the white pages because FirsTel classified Mobile's business numbers as "unlisted." Mobile claims that it immediately contacted FirsTel and was assured that the classification would be changed in time for Dex to include Mobile in the publication of the 1999–2000 directory. When the Dex directories were distributed months later, Mobile's telephone number was not included in the business white pages. Mobile also found that its business number was still classified as "unlisted," despite FirsTel's previous assurances.

[¶ 4.] Mobile sued FirsTel for breach of contract and ordinary negligence, seeking damages for loss of business and the cost of additional advertising. FirsTel moved to dismiss, claiming that Mobile was barred by a tariff that limited Mobile's damages to the proportionate charge for the service for the period during which the service was affected. Mobile then moved to amend its complaint to include a claim that including the tariff created an illegal contract adhesion and therefore was unenforceable. Mobile also sought to amend its negligence claim and additionally assert that FirsTel's acts were intentional and reckless.

[¶ 5.] The trial court denied FirsTel's motion to dismiss and granted Mobile's motion to amend, concluding that the tariff was an unconstitutional delegation of legislative authority. FirsTel appeals.

## STANDARD OF REVIEW

[¶ 6.] This Court's standard of review of a trial court's grant or denial of a motion to dismiss is the same stan-

dard that is applied upon review of a motion of summary judgment: 'is the pleader entitled to judgment as a matter of law?' We review all facts in a light most favorable to the nonmoving party. In reviewing under this standard, we give no deference to the trial court's conclusions of law.

*Hansen v. Kjellsen*, 2002 SD 1, ¶ 6, 638 N.W.2d 548, 549 (internal citations omitted).

## ANALYSIS AND DECISION

[¶ 7.] On May 29, 1998, FirsTel filed a telephone tariff with the PUC. Section 2.4.1.A of the tariff provides:

The Company's liability, if any, for its willful misconduct is not limited by this tariff. With respect to any other claim or suit by a Customer or by any others, for damages associated with the installation, provision, termination, maintenance, repair or restoration of a service, and subject to the provisions following, the Company's liability, if any, *shall not exceed an amount equal to the proportionate charge for the service for the period during which the service was affected.* This liability for damages shall be in addition to any amounts that may otherwise be due the Customer under this tariff as a Credit Allowance for Interruptions.

(emphasis added). The contract between Mobile and FirsTel is preprinted on the front and back on one sheet of paper. The contract does not state that FirsTel's liability is limited. The tariff is not set out in the contract. The only mention of any tariff is contained in this oblique statement on the back of the contract:

FirsTel provides service in accordance with applicable Tariffs for the state or

federal jurisdiction in which Service is provided, incorporated herein by this reference.

FirsTel argues that a telephone company may limit its liability for negligence and breach of contract through tariff provisions. They claim that the tariffs act to protect the public from increased utility rates. Mobile concedes that the Legislature may constitutionally delegate regulation of telecommunication tariffs to the PUC. Mobile argues, however, that FirsTel may not insulate itself from liability for ordinary negligence and breach of contract by unilaterally drafting and filing a tariff with the PUC [1] and then incorporating it by reference in the contract. We agree.

[¶ 8.] In *Rozeboom v. Northwestern Bell Tel. Co.*, 358 N.W.2d 241 (S.D.1984), this Court determined that a similar agreement between a telecommunications company and the PUC was an illegal contract of adhesion. *Rozeboom*, 358 N.W.2d at 242. In *Rozeboom*, a citizen operated a business, Rozy's Electric, out of his home and for years had placed ads in the yellow page section of the local telephone directory. His yellow page ad was left out in May of 1980. Rozeboom brought suit claiming $25,000 in damages. Northwestern Bell had a limitation of liability clause in its contract for directory listings. The contract in *Rozeboom* provided:

If the Telephone Company shall omit said advertisement or any additional advertising from any issue of its directory, in whole or in part, or shall make errors therein, *its liability therefor shall in no event exceed the amount of the charges for the advertising which was omitted or*

---

1. There is no dispute that the tariff does not insulate FirsTel from Mobile's claim that FirsTel acted intentionally and recklessly. That

claim is analogous to "willful misconduct," which is specifically excluded by the terms of the tariff.

*in which the error occurred in such directory issue.*

*Id.* (emphasis added). This Court determined that this agreement was a contract of adhesion, that it was unconscionable, and that it should not be enforced as a matter of public policy. *Id.* at 242–43. This Court stated, "[t]he PUC cannot become a body to regulate claims for damages wrought in private contract. To regulate tariffs, schedules, directories, and listings is one thing, but to adjudicate on monetary rights arising thereunder is conceptually different." *Id.* at 245–46.

▬ [¶ 9.] FirsTel's inclusion of the tariff filed with the PUC by reference in the contract creates an illegal contract of adhesion, and the contract is unconscionable and unenforceable. Mobile did not participate in the drafting of FirsTel's tariff. Mobile did not negotiate the tariff with either FirsTel or the PUC. The pre-printed form did not even set forth the tariff but merely incorporated all tariffs by reference. This Court has previously declared that "[o]ne-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconstitutional." *Durham v. Ciba–Geigy Corp.,* 315 N.W.2d 696, 700 (S.D.1982). The Legislature cannot constitutionally delegate authority to the PUC to approve tariffs that limit or deny contract and tort remedies. *Rozeboom,* 358 N.W.2d at 246–47; SD Const art VI § 20.

[¶ 10.] FirsTel argues the *Rozeboom* was narrowly based on the facts of the case, and is therefore inapplicable to the case at bar. In *Rozeboom* we acknowledged:

It is crucial to understand that this case involves an individual versus a monopo-

ly. We do not have two corporations dealing at arms length nor two individuals dealing at arms length. We have a factual scenario where the bargaining power is wholly unequal. As a result of that economic inequality and monopoly of [the phone company], the terms of this contract became substantively unreasonable and should not be enforced. We do not suggest that simply because this contract is standardized and pre-printed, *ipso facto,* it is unenforceable as a contract of adhesion. Rather, we hold that the terms of this specific standardized contract are unreasonable, oppressive and therefore unconscionable.

*Rozeboom,* 358 N.W.2d at 245.

[¶ 11.] FirsTel claims that since there are other avenues of advertising available to Mobile, FirsTel should not be liable. However, it is not rational to claim that a commercial business can compete without listing its telephone number in the telephone directory. "The issue ... is not whether there are other forms of advertising available but whether such other modes are tied directly to the telephone service enjoyed by almost every home and business in the state." *Morgan v. South Cent. Bell Tel. Co.,* 466 So.2d 107, 117 (Ala.1985). Other businesses are faced with full liability for negligence and breach of contract. FirsTel cannot shield itself from liability by this tariff.

[¶ 12.] We acknowledge that at the time *Rozeboom* was decided, the majority of jurisdictions upheld provisions that limited phone companies' liability in omitting or erroneously listing numbers or advertisements in a directory.[2] *Id.* at 247–48 (Fosheim, C.J., dissenting). We also acknowledge that eighteen years later, *Rozeboom* continues to enjoy its minority sta-

---

2. For a list of jurisdictions that have previously enforced provisions limiting phone compa-
nies' liability, see *Rozeboom,* 358 N.W.2d at 247–248 (Fosheim, C.J., dissenting).

tus. However, we addressed this precise argument in *Rozeboom*, stating:

> We fully appreciate that our viewpoint is not the traditional viewpoint in this Nation. The righteousness of a cause is often solitary and perhaps time will better serve our pronouncement. In a democratic society, we persevere under a system of laws where change is inevitable.... Here, we associate with change rooted in simple fairness and opposed to basic oppression.

*Id.* at 246.

[¶ 13.] *Rozeboom* controls. The tariff provisions unilaterally filed with the PUC and included in the contract by reference that attempts to limit liability created an illegal contract of adhesion and are unenforceable. Mobile has the right to sue for negligence and breach of contract for the detriment caused to its business. As this Court declared in *Rozeboom*, "[j]ustice demands that an aggrieved party reach out and touch the cause of his grievance." *Id.* at 246.

[¶ 14.] Affirmed.

[¶ 15.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 16.] AMUNDSON, Justice, and BASTIAN, Circuit Judge, dissent.

[¶ 17.] BASTIAN, Circuit Judge, sitting for SABERS, Justice, disqualified.

[¶ 18.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

BASTIAN, Circuit Judge (dissenting).

[¶ 19.] I respectfully dissent. I agree that Firstel is not immunized from Mobile's allegations that Firstel acted intentionally and recklessly but I would enforce Firstel's tariff and hold that it applies to Mobile's damage claims for breach of contract and ordinary negligence.

[¶ 20.] This Court's decision in *Rozeboom* was based on *Allen v. Michigan Bell Telephone Co.*, 18 Mich.App. 632, 171 N.W.2d 689 (1969). In *Allen*, plaintiff, an insurance agent, signed a contract with defendant, Michigan Bell Telephone Company, to place advertisements in defendant's telephone directory. At the time, defendant was the sole provider of telephone directories in the area. When defendant failed to print the advertisements and plaintiff subsequently sued, defendant argued that a limitation of liability clause in the contract protected it from having to pay damages. Defendant moved for and was granted summary disposition.

[¶ 21.] On appeal, the Michigan Court of Appeals found that the limitation of liability clause was unconscionable because of plaintiff's lack of options and bargaining power as compared to the defendant. *Id.* at 692. *See also* Michigan Ass'n of Psychotherapy Clinics v. Blue Cross & Blue Shield of Michigan, 101 Mich.App. 559, 574, 301 N.W.2d 33, 40 (1980). The Court's primary concern was that plaintiff was contracting with a public utility which had a monopoly on the type of advertising sought. *Michigan Ass'n of Psychotherapy Clinics*, 301 N.W.2d at 40.

[¶ 22.] At the time *Rozeboom* was decided and thereafter, the vast majority of jurisdictions have upheld provisions that limit the liability of telephone companies in omitting or erroneously listing numbers or advertisements in a directory.[3] *Rozeboom* and *Allen* and virtually all other cases with

---

**3.** In addition to *Rozeboom* and *Allen*, cases that reject exculpatory clauses include *Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co.*, 117 Wis.2d 587, 345 N.W.2d 417 (1984); *Morgan v. South Central Bell Telephone Co.*, 466 So.2d 107 (1985); and *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612 (Tex.App.1985); *Pigman v.*

similar holdings were decided before the deregulation of the telecommunication industry.

[¶ 23.] Many of the courts that have upheld limitation of liability clauses have recognized that in providing its service, a telephone company is significantly different from a private business because it must operate under the rules of a state regulatory commission.

*Ameritech Publishing, Inc.*, 641 N.E.2d 1026 (Ind.App.1994) (overruled) 700 N.E.2d 1128 (Ind.1998). A majority of tribunals in other states that have addressed this issue have upheld the validity of such clauses: *Mendel v. Mountain States Tel. & Tel. Co.*, 117 Ariz. 491, 573 P.2d 891 (1977); *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co.*, 366 F.Supp. 307 (W.D.Ark.1973); *Davidian v. Pacific Tel. & Tel. Co.*, 16 Cal.App.3d 750, 94 Cal. Rptr. 337 (1971); *University Hills Beauty Acad., Inc. v. Mountain States Tel. & Tel. Co.*, 38 Colo. App. 194, 554 P.2d 723 (1976); *Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.*, 494 A.2d 636 (Del.1985); *Neering v. Southern Bell Tel. Co.*, 169 F.Supp. 133 (S.D.Fla.1958); *Advance Service, Inc. v. General Tel. Co. of Fla.*, 187 So.2d 660 (Fla.App.1966); *Southworth & McGill, P.A., v. Southern Bell Telephone and Telegraph Co.*, 580 So.2d 628 (Fla.App. 1 Dist. 1991); *Southern Bell Tel. & Tel. Co. v. C & S Realty Co.*, 141 Ga.App. 216, 233 S.E.2d 9 (1977) (overruled in part on other grounds); *Georgia–Carolina Brick and Tile Co. v. Brown*, 153 Ga.App. 747, 266 S.E.2d 531 (1980); *McClure Engineering Assocs., Inc. v. Reuben Donnelley Corp.* 101 Ill.App.3d 1109, 57 Ill.Dec. 471, 428 N.E.2d 1151 (Ill.App.1981) aff'd., 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400; *Pinnacle Computer Services, Inc., v. Ameritech Publishing, Inc.*, 642 N.E.2d 1011 (Ind.App.1994); *Prior v. GTE North Incorporated*, 681 N.E.2d 768 (Ind.App.1997); *Trimble v. Ameritech Publishing, Inc.*, 700 N.E.2d 1128 (Ind.1998); *Woodburn v. Northwestern Bell Tel. Co.*, 275 N.W.2d 403 (Iowa 1979); *Holman v. Southwestern Bell Tel. Co.*, 358 F.Supp. 727 (D.Kan.1973); *Louisville Bear Safety Serv., Inc. v. South Cent. Bell Tel. Co.*, 571 S.W.2d 438 (Ky.App.1978); *Wilson v. Southern Bell Tel. & Tel. Co.*, 194 So.2d 739 (La.App.1967); *Baird v. Chesapeake and Potomac Tel. Co.*, 208 Md. 245, 117 A.2d 873 (1955); *Alpha One v. NYNEX Information Resources*, 2 Mass.L.Rptr. 568 (Mass.Super.1994); *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm*, 115 Mich.App. 278, 283–284, 320 N.W.2d 244 (1982); *All Makes S–V, Inc. v. Ameritech Publishing, Inc.*, 2001 WL 951381 (Mich.App.); *Ezell v. Bellsouth Telecommunications, Inc.*, 961 F.Supp. 149 (S.D.Miss.1997); *Warner v. Southwestern Bell Tel. Co.*, 428 S.W.2d 596 (Mo.1968); *Tobler's Flowers, Inc., v. Southwestern Bell Telephone Co.*, 632 S.W.2d 15 (Mo.App.1982); *Montana ex rel. Mountain States Tel. & Tel. Co.*, 160 Mont. 443, 503 P.2d 526 (1972); *Bernstein v. G.T.E. Directories Corp.*, 631 F.Supp. 1551 (D.Nev.1986); *Bulbman v. Nevada Bell*, 108 Nev. 105, 825 P.2d 588 (1992); *PK's Landscaping v. New England Tel. & Tel. Co.*, 128 N.H. 753, 519 A.2d 285 (1986); *Federal Building Serv. v. Mountain States Tel. & Tel. Co.*, 76 N.M. 524, 417 P.2d 24 (1966); *Hamilton Employment Serv. v. New York Tel. Co.*, 253 N.Y. 468, 171 N.E. 710 (1930); *Gas House v. Southern Bell Tel. & Tel. Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976); *North Carolina ex rel Utilities Comm. v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 299 S.E.2d 763 (1983); *Cunha v. Ohio Bell Tel. Co.*, 26 Ohio Misc. 267, 271 N.E.2d 321 (1970); *Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co.*, 279 F.Supp. 712 (W.D.Okla.1967); *Vails v. Southwestern Bell Tel. Co.*, 504 F.Supp. 740 (W.D.Okl.1980); *Georges v. Pacific Tel. & Tel. Co.*, 184 F.Supp. 571 (D.Or. 1960); *Behrend v. Bell Tel. Co. of Pa.*, 257 Pa.Super. 35, 390 A.2d 233 (1978); *Pride v. Southern Bell Tel. & Tel. Co.*, 244 S.C. 615, 138 S.E.2d 155 (1964); *Pilot Indus. v. Southern Bell Tel. and Tel. Co.*, 495 F.Supp. 356 (D.C.S.C. 1979); *Smith v. Southern Bell Tel. & Tel. Co.*, 51 Tenn.App. 146, 364 S.W.2d 952 (1962); *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330 (Utah 1985); *McTighe v. New England Tel. & Tel. Co.*, 216 F.2d 26 (2dCir.1954); *Allen v. General Tel. Co. of the Northwest*, 20 Wash.App. 144, 578 P.2d 1333 (1978).

[¶ 24.] A telephone company's duty to provide adequate service is inextricably connected to its rates and expenses, including its potential liability for errors and omissions. *See e.g. Prior v. GTE North Incorporated,* 681 N.E.2d at 773. It is the responsibility of the state regulatory commission to find a balance among these factors. *Prior v. GTE North Incorporated,* 681 N.E.2d at 773–774. A tariff merely represents a trade-off between providing customers with a relatively low-cost service and ensuring that the utility will provide reasonably adequate service. *Prior v. GTE North Incorporated,* 681 N.E.2d at 774.

[¶ 25.] The majority essentially holds that Firstel's tariff is unconscionable and unenforceable per se. The facts of this case, however, differ from those presented in *Rozeboom* and *Allen.* In both cases plaintiffs were private individuals bringing a lawsuit against the Bell Telephone monopoly. Here, both litigants are corporations and the Bell Telephone monopoly no longer exists.

[¶ 26.] In *Rozeboom* the limitation of liability clause completely immunized the telephone company from all legal actions including breach of contract, ordinary negligence, willful and wanton misconduct, and deliberate and intentional conduct. Here, as noted by the majority, Firstel's tariff does not protect it from Mobile's allegations of intentional and reckless acts. In *Rozeboom* and *Allen,* the defendant was the party that omitted the listing or advertising from its own directory. Here, the defendant telephone company allegedly failed to properly classify a telephone number which prevented it from being listed in another company's directory.

[¶ 27.] Moreover, Mobile has failed to plead the very facts upon which the holdings in *Rozeboom* and *Allen* are essentially based. Mobile does not allege, for exam-

ple, that it had no choice but to contract with Firstel. Mobile does not allege that Firstel holds a monopoly on providing telephone service in the area. It does not allege that its bargaining power was unequal.

[¶ 28.] Therefore, based on the abundance of legal precedent and the dearth of factual underpinnings I would hold that Mobile's claim for damages for breach of contract and ordinary negligence is subject to and limited by Firstel's tariff.

[¶ 29.] AMUNDSON, Justice, joins this dissent.