**MICHIGAN BELL TELEPHONE COMPANY, a Michigan corporation, Plaintiff,**

v.

**PACIFIC IDEAS, INC., a foreign corporation, Defendant.**

No. 88–CZ–74956.

United States District Court, E.D. Michigan, S.D.

Feb. 7, 1990.

Craig Anderson, Michigan Bell Telephone Co., Detroit, Mich., for plaintiff.

Edwin M. Bladen, Moran & Bladen, Lansing, Mich., for defendant.

## MEMORANDUM, OPINION AND ORDER

GADOLA, District Judge.

On September 23, 1987, Michigan Bell Telephone Company ("Michigan Bell" or "MBT") and Pacific Ideas, Inc., ("Pacific") entered into a Billing Service Agreement ("BSA"), in connection with Pacific's recorded telephone message service. This message service is also known as a Sponsored Program Service ("SPS") or SPS program. This Sponsored Program Service allows Pacific, using Michigan Bell's transport, billing and collection facilities, and services, to offer a recorded message to those who call certain telephone numbers associated with the program. By dialing the telephone number assigned to the sponsor, consumers gain access to that sponsor's program. The sponsor establishes a price that the caller pays for listening to the recorded program. The design of the SPS allows sponsors to provide recorded messages to hundreds of callers per hour, from a single telephone number. The SPS is also commonly known as a "976" service.

Section IV of the September 23, 1987 Billing Service Agreement addresses monthly fees and provides in pertinent part as follows:

> MBT shall purchase from customer its accounts receivable on a monthly basis. In consideration, MBT will remit to Customer the amount billed in one billing month, minus tariff charges, minus two cents (2¢) per call billed, minus actual uncollectibles.
>
> In addition, if one month of billing exceeds three hundred thousand dollars ($300,000.00), an additional twenty percent (20%) of the total amount billed will be held for anticipated uncollectible.

This anticipated uncollectible will be compared with realized uncollectible and the difference will be remitted or withheld from the following month's settlement. If, in any given month, the amount actually collected is insufficient to cover the amount of the tariff charges, plus the two cents (2¢) per call billed, the Customer will be billed by MBT for the deficit. If the customer does not reimburse MBT for the deficit within twenty-one (21) days of the date of the bill, the *service will be terminated.*

\* \* \* \* \* \*

Michigan Bell reserves a right to cancel the Billing Service Agreement or change the above percentages and per call amounts at any time after 30 days written notice to the customer. (Emphasis added).

On April 28, 1988, Michigan Bell submitted a bill to Pacific for the amount of $18,515.33.

Pacific failed to pay this alleged amount due, so Michigan Bell terminated Pacific's services on June 22, 1988. On August 4, 1988, Michigan Bell instituted a collection action against Pacific. On September 14, 1988, Pacific answered Michigan Bell's complaint and filed a counterclaim. On September 16, 1988, Pacific amended its answer and counterclaim. On October 5, 1988, Michigan Bell answered Pacific's counterclaim. Several supplemental briefs were filed by both parties subsequent to these dates.

At issue before the court is Michigan Bell's May 4, 1989, motion for summary judgment. Michigan Bell brings this motion pursuant to Fed.R.Civ.P. 56. On May 23, 1989, Pacific filed its response to Michigan Bell's summary judgment motion.

This court will address Michigan Bell's complaint and summary judgment motion, and then Pacific's counterclaim.

## STANDARD OF REVIEW

Summary judgment shall be granted after adequate time for discovery, when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Material facts are those which under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Furthermore, the disputed issue must be genuine, i.e., the evidence must also be sufficiently probative to permit a reasonable jury to return a verdict for the opposing party. 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. 477 U.S. at 249, 106 S.Ct. at 2510; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the opposing party. *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

Rule 56(c) places the initial burden on the movant to show that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Summary judgment must be granted when the opposing party fails to make a showing sufficient to establish the existence of an element essential to the case, and on which it bears the burden of proof at trial. *Id.,* 106 S.Ct. at 2552–2553. When there is a complete failure of proof concerning an essential element of the opposing party's case, there can be no genuine issue of material fact since all other facts are rendered immaterial. *Id.*

## I.

### MBT'S COMPLAINT

The gravamen of Michigan Bell's three-count complaint asserted that MBT had performed, in all material respects, its obligations under the terms of the September 23, 1987 Billing Service Agreement. According to Michigan Bell, on April 28, 1988, MBT submitted a bill to Pacific for the amount of $18,515.33. Michigan Bell contends that contrary to Pacific's obligations under the BSA, Pacific failed to pay any portion of the amount due or owing. Mi-

chigan Bell now asserts that $116,000.83 has become due since MBT filed its original complaint. (Affidavit of Theresa J. Buchanan).

Pacific filed its amended answer and affirmative defenses on September 16, 1988. In addition to denying the substance of Michigan Bell's complaint, Pacific asserted six affirmative defenses. These affirmative defenses are discussed, seriatim, infra.

In Michigan Bell's summary judgment motion, it asserted that through its interrogatories and request for admissions to Pacific, MBT specifically requested Pacific to produce evidence that the amounts billed by Michigan Bell were not owed. Michigan Bell argued that Pacific did not provide any evidence that indicated MBT's bills for services were incorrect or false. Moreover, Pacific allegedly admitted in its response to MBT's request for admissions that Pacific, in fact, received a copy of each of the bills as they fell due.

In Pacific's May 23, 1989 opposition brief to MBT's summary judgment motion, Pacific contends that it raised several defenses to MBT's complaint. Pacific's alleged defenses are the same as those asserted in its September 16, 1988, amended affirmative defenses. This court will now examine Pacific's affirmative defenses to Michigan Bell's claim, and determine whether they are, in effect, a bar to Michigan Bell's collection action.

### A.

■ For its first affirmative defense, Pacific asserts that MBT "failed to state a claim upon which relief can be granted." This affirmative defense challenges the sufficiency of the complaint as pled. After construing the complaint in a light most favorable to plaintiff, and taking all well-pled material facts as true, this court finds that MBT has filed a complaint that can withstand the scrutiny of this defense. Therefore, this court finds Pacific's first affirmative defense to be meritless.

### B.

■ For its second affirmative defense, Pacific asserts:

Plaintiff is barred from collecting any amount under the agreement for the reason that the agreement is unlawful and, therefore, void and unenforceable. The billing and collection services provided for therein are offered as part of plaintiff's Michigan Public Service Commission Tariff No. 2, which Tariff is unlawful as it violates the Equal Access and Equal Information Access obligations of plaintiff under *United States v. Western Electric Co.*, 673 F.Supp. 525(d)(c) 1987.

In *Carlin Communication v. Southern Bell*, 802 F.2d 1352, 1354 (1986) the Eleventh Circuit adjudicated an action involving a party providing a similar service to that of Pacific. The appeals court described the service as follows:

Dial–It is an announcement service provided by local telephone companies that allows telephone customers to call a specific number and receive a pre-recorded message supplied by a subscriber to the service. The telephone company bills the customer for the call at a rate set by a subscriber. The telephone company deducts flat rate and usage charges and then forwards the rest of the collection billings to the subscriber.

The Eleventh Circuit summarily discussed potential equal access problems in the following manner:

The FCC has classified Dial–It as an enhanced service that is *not required to be made available on an equal access basis. Computer & Communications Industry Ass'n. v. FCC*, 693 F.2d 198, 205 (D.C.Cir.1982), *cert. denied sub nom, Louisiana Public Services Comm'n. v. FCC*, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). (Emphasis added).

In *Computer & Communications Industry Ass'n., supra* the District of Columbia Circuit found:

In *Computer II* the Commission abandoned the attempt to classify activities as either communications or data processing based on the nature of the processing performed. The respective technologies had become so intertwined, according to the Commission, that it had become im-

possible to draw an "enduring line of demarcation" between them. In the course of its *Second Computer Inquiry,* the Commission concluded that the only clear and lasting distinction would be one between basic transmission service on the one hand and enhanced services and customer premises equipment (CPE) on the other. According to the Commission, drawing the regulatory line in this way would minimize the type of ad hoc adjudication that has taken place under the 1971 rules. In addition, such a distinction would make it possible to eliminate unneeded regulation and thereby promote efficient use of the telecommunications network.

Under the *Computer II* scheme, the Commission continued to require common carriers to provide basic transmission services under tariff on an equal basis to all customers. The Commission found that enhanced services and CPE were not within the scope of its Title II jurisdiction but were within its ancillary jurisdiction. Accordingly, the Commission discontinued Title II regulation of enhanced services and with the exception of AT & T, relieved common carriers of the "maximum separation" requirement upon which their offerings of enhanced services were conditioned under *Computer I.*

In the present action, the Sponsored Program Service used by Pacific is clearly an enhanced service. Since enhanced services are not required to be made available on an equal access basis, Pacific's "equal access" and "equal information access obligation" affirmative defenses are without merit. See *Carlin Communication v. Southern Bell,* 802 F.2d 1352 (1986) and *Computer & Communications, supra.* Furthermore, this court finds that *United States v. Western Electric Co.,* 673 F.Supp. 525 (D.C.Cir. 1987), is not controlling on this affirmative defense. Accordingly, Pacific's second affirmative defense does not bar MBT's claim.

### C.

For its third affirmative defense, Pacific asserts:

Plaintiff is barred from collecting any amounts under the agreement for the reason that the agreement and plaintiff's MPSC Tariff No. 2, pursuant to which the Agreement is written, are void and unenforceable as an unlawful revenue sharing agreement in violation of the order and opinion of *United States v. Western Electric Co.,* 673 F.Supp. 525 (D.C. Cir.1987), and *United States v. Western Electric Co.,* 690 F.Supp. 22 (D.C.1988).

Michigan Bell, in addressing Pacific's third affirmative defense, states "Pacific Ideas affirmative defense number III must fail for the same reasons as affirmative defense number II." (MBT's motion for summary judgment, at 5). Pacific, in its opposition brief makes a blanket statement that the collection agreement is void and unenforceable as an unlawful revenue sharing agreement.

Neither party in the present action addresses with sufficient thoroughness the merits of this alleged defense.

In *United States v. Western Electric Co.,* 673 F.Supp. 525, (D.D.C.1987), the court discussed consolidated billing arrangements and revenue sharing. The court stated:

There is no objection *per se* on anti-competitive grounds to consolidated billing, that is, the mailing by a Regional Company of a single bill covering both its own fees and those of the particular providers. However, if the Regional Companies were permitted to operate a billing arrangement in conjunction with the information service providers that amounted, in effect, to the sharing of revenue, a strong opportunity would be created for anti-competitive conduct, for that type of arrangement would give the Regional Companies an incentive to discriminate in favor of those companies whose revenue it shared. That incentive, coupled with the regional companies undoubted ability to disadvantage competitors, would be enough to raise precisely the concerns that led to the adoption of the decree. Accordingly, while these companies may be permitted to provide consolidated bill-

ing arrangements, they will not be permitted to enter such arrangements that provide for the sharing of revenue. *Id.* at 594.

Section IV of the Billing Service Agreement indicates that not only is MBT providing billing services, but also that MBT is purchasing Pacific's account receivables. Since the parties have submitted insufficient evidence or authority concerning this alleged "revenue sharing", this court will reserve judgment on this defense pending oral argument. As the court indicated in *United States v. Western Electric Co.*, 673 F.Supp. 525 (1987), consolidated billing agreements are not objectionable per se, on anti-competitive grounds, however, a billing arrangement in conjunction with the information service providers, may in effect amount to revenue sharing.

Therefore, until this Court has had oral arguments on the issue of revenue sharing, its judgment is reserved.

### D.

■ For its fourth affirmative defense, Pacific states:

Plaintiff is barred from collecting any amounts under the agreement for the reason that plaintiff has failed to undertake any reasonable efforts to collect said amounts from the appropriate customer.

Pacific, in its opposition brief, argues that Michigan Bell "has been unable, or unwilling, to provide any documentation whatsoever as to its efforts to collect these so-called uncollectibles ...". (Pacific opposition brief at 6).

Section XV of the BSA provides "MBT will render bills for customer-provided announcement services on MBT's bills to MBT subscribers in keeping with the standard MBT billing process."

Attached to and in support of Michigan Bell's summary judgment motion, is the affidavit of "staff supervisor", Theresa J. Buchanan. Paragraph 8 of the Buchanan affidavit states "as to all amounts included in the billing summarized on Exhibit A as uncollectibles, the business records of Michigan Bell indicate that reasonable efforts were made to collect such amounts".

This Court's examination of the BSA finds that it does not contain any specific procedure that must be followed by MBT concerning its attempted collection of "uncollectible" accounts. The document is plain on its face and its unambiguous language only provides that uncollectible accounts will be billed back to Pacific. (BSA Section IV).

It is this court's opinion that the BSA does not require Michigan Bell to provide Pacific with the alleged documentation of its collection attempts, nor place an affirmative duty to do more than bill the customer for Pacific's services. Moreover, the Buchanan affidavit indicates MBT made "reasonable efforts to collect" the uncollectible accounts before charging them back to Pacific.

Therefore, based upon the Buchanan affidavit, the parties' briefs, and a plain reading of the BSA, this Court finds Pacific's fourth affirmative defense to be meritless.

### E.

■ For its fifth affirmative defense, Pacific asserts:

Plaintiff is barred from collecting any amounts under the agreement for the reason that plaintiff terminated the agreement and plaintiff's services to the defendant at the behest of the Michigan Public Service Commission due to the content of the services provided by defendant, a violation of defendant's constitutional rights of free speech and association and a violation of the governing statute granting plaintiff their franchise. If such unlawful termination of plaintiff's services had not occurred, said amounts may have been paid to Michigan Bell by the appropriate customer.

In its summary judgment motion, Michigan Bell contends that it terminated its agreement with Pacific "because Pacific Ideas failed to pay for the [SPS] service". (MBT's brief at 7). Michigan Bell also submits that even if Pacific's SPS program had been terminated based on content, such termination does not violate Pacific's con-

stitutional rights because "state action" was not involved.

Pacific, in its opposition brief, asserts that Michigan Bell was acting as the "alter ego or surrogate for state officers in carrying out an impermissible intrusion upon the infringement of Pacific Ideas, Inc.'s right to free speech and association." (Pacific's opposition brief at 17). Pacific submits that it has sufficiently pled the requisite "state action", arguing that "state action" is present for First Amendment purposes when "a sufficiently close nexus exists between government and the specific private activity in question." (Pacific's opposition brief at 17). Pacific relies on *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

The issue of state action and its relationship to alleged First Amendment infringements by telecommunication carriers was recently addressed in *Network Communications v. Michigan Bell*, 703 F.Supp. 1267 (E.D.Mich.1988). In that opinion, Judge Taylor adroitly set forth the relevant standards to be utilized, as well as a synopsis of court decisions on this issue. This court excerpts and employs the applicable segments of *Network*, in the following analysis.

In any action brought under 42 U.S.C. § 1983, plaintiff's initial burden is to demonstrate that the alleged infringement of federal rights is either state action or action that may be "fairly attributable to the state". *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982).

In *Jackson v. Metropolitan Edison Co., supra*, the Supreme Court held that the fact that a privately-owned utility company operates as a monopoly under state law does not, in and of itself, transform all of the private utilities acts into "state action". In *Jackson* the Supreme Court concluded that, despite its extensive regulation by the State Public Utility Commission, the defendant's acts of discontinuing service for nonpayment of bills was not state action. *Id.* 419 U.S. at 358, 95 S.Ct. at 457.

In *Rendell–Baker v. Kohn, supra*, the plaintiff, employees of a private school, alleged that they had been discharged in retaliation for exercising First Amendment rights. The Supreme Court concluded that, despite the fact that the school received more than 90% of its funds from public sources and was heavily regulated by state and local authorities, its decision to terminate plaintiff's employment did not constitute state action absent some proof that the termination decision was either compelled or influenced by state regulation or other acts. *Id.*, 457 U.S. at 841–42, 102 S.Ct. at 2771–72.

In *Adams v. Vandemark* 855 F.2d 312 (1988), the Sixth Circuit held that despite strong evidence of a "symbiotic relationship" between a non-profit corporation funded almost entirely from public sources and a Michigan city from which the corporation had leased office space for thirty years at a nominal rent, the non-profit corporation's decision to terminate the plaintiff was not "state action" absent evidence that state regulation compelled or influenced the termination decision.

In Pacific's opposition brief, it alleges that Michigan Bell had acted as "the alter ego or surrogate for state officers in carrying out an impermissible intrusion upon the infringement of Pacific Ideas, Inc.'s right to free speech and association." (Pacific opposition brief at 17). The "state officers" Pacific refers to are undoubtedly the Michigan Public Service Commission. Pacific submits that the Michigan Public Service Commission compelled Michigan Bell to stop providing the service because of its content. Michigan Bell argues that it terminated Pacific's service for the simple reason that Pacific failed to pay its bills.

This court finds that Michigan Bell had a legitimate basis for terminating Pacific's SPS program. Section IV of the Billing Service Agreement specifically provided for termination of the service within 21 days after the bill became due and the customer had not reimbursed MBT. This court finds that Pacific's termination was a legitimate business decision on the part of Michigan

Bell and did not involve state action on the part of the M.P.S.C.

Furthermore, two recent decisions by Federal Appellate Courts specifically address the distinction between prohibited state action and private business decision-making in the context of telephone company services and privately sponsored programs such as Pacific's recorded message service.

In *Carlin Communications, Inc. v. Southern Bell*, 802 F.2d 1352 (11th Cir. 1986), a "Dial–It" or sponsored program subscriber (such as Pacific) was denied access to the local telephone company's exchange facilities to transmit recorded messages deemed to be sexually-explicit. In affirming the District Court's grant of summary judgment to the defendant based on a finding of no state action, the Court of Appeals emphasized the distinction between state action and private business decisions:

> [T]he mere fact that Southern Bell's conduct in excluding Carlin from access to Dial–It service might in the context of state action constitute impermissible prior restraint does not of itself make the conduct unconstitutional. Carlin must show that Southern Bell's actions are "fairly attributable to the State". *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed. 482 (1982).
>
> *       *       *       *       *       *
>
> [Mere] approval of or acquiescence in, the initiatives of a private party is not sufficient to establish state action: "A state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982).

In *Carlin Communications, Inc. v. Mountain States Telephone & Telegraph Company*, 827 F.2d 1291 (9th Cir.1987), cert. denied, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988), the Ninth Circuit held that the initial termination of plaintiff's sexually suggestive dial-a-message program did constitute state action solely because the determination was made at the request of a deputy county attorney threatening defendant with prosecution under Arizona criminal law. The court found that such action amounted to an impermissible exercise of "coercive power" by the state. 827 F.2d at 1295. However, the Court of Appeals went on to hold, consistent with the Eleventh Circuit's decision in *Southern Bell*, that the subsequent termination of plaintiff's service under the new company policy excluding all "adult entertainment" from the 976 network did not constitute state action, but was a matter of private contract between the parties. *Id.* at 1297.

Thus, both the Ninth and Eleventh circuits have held that telephone companies may adopt policies under which they decline to provide sponsored program services to information providers offering sexually-explicit messages, as a matter of business discretion and judgment.

In *Southern Bell* the court concluded: While 'public' censorship may be a function traditionally performed by the state, it is clear that restriction of message content by a private company based on a determination that it does not wish to do business with another company is not a traditional state function, much less one exclusively reserved to the state. *A private business is free to choose the content of messages with which its name and reputation will be associated* and such a choice is not the exercise of a public function. 802 F.2d at 1361. (Emphasis added).

Here, in light of the above decisions, this court finds that Michigan Bell's termination of Pacific's SPS program was a permissible business decision made in accordance with the Agreement entered into by the parties. Pacific failed to pay its bill and Michigan Bell terminated its program. The court finds no coercion, either overt or covert, on the part of the Michigan Public Service Commission. Therefore, Pacific's fifth affirmative defense is without merit.

## F.

For its sixth affirmative defense, Pacific asserts:

Plaintiff is barred from collecting any sums under the agreement for the reason that it is unconscionable and was signed by defendant under duress imposed by plaintiff and upon threat by plaintiff of unlawful action, *to-wit:* threatened unlawful termination of defendant's Sponsored Program Service.

Michigan Bell, in its summary judgment motion, argues that the contract between the parties is not unconscionable and is expressly authorized by MPSC tariff 2. Further, Michigan Bell contends that the contract was terminated for an entirely legitimate reason: nonpayment.

Pacific contends that the Billing Service Agreement was rendered unconscionable by a provision absolving MBT of "any duty or responsibility for both the collection of the accounts receivable it purchases from Pacific Ideas, Inc., and providing any information to Pacific Ideas, Inc. concerning those accounts it claims as 'uncollectible'". (Pacific's opposition brief, at 13).

Pacific asserts that the commercial setting in which this dispute arises, "leaves no practical alternative available to Pacific Ideas, Inc., for its billing and collection services". (Pacific's opposition brief, at 14). Thus, Pacific alleges that the chargeback for uncollectibles is "unreasonable in light of the refusal by Michigan Bell to assume good faith duties to collect the accounts and provide commercially necessary information to Pacific Ideas, Inc., in order to collect the account". (Pacific opposition brief at 15).

Pacific asserts that the charge back for "actual uncollectible" is the "functional equivalent of an exculpatory clause". Pacific sets forth three decisions in which allegedly similar exculpatory provisions were unenforceable because they were found unreasonable and unconscionable. The decisions are *Allen v. Michigan Bell,* 18 Mich.App. 632, 171 N.W.2d 689 (1969), *Reed v. Kaydon Engr. Corp.,* 38 Mich.App. 353, 196 N.W.2d 487 (1972) and *Commercial Movie Rental, Inc. v. Larry Eagle,*

*Inc.,* File No. K–88167 CA7 (W.D.Mich. 1989).

In *Allen,* the plaintiff brought an action against Michigan Bell Telephone Company for damages arising from Michigan Bell's failure to list plaintiff in the yellow pages of Michigan Bell's telephone directory. A clause in the parties' contract limited Michigan Bell's liability to its damages for breach of contract, i.e. the cost tendered by plaintiff for the advertisement. The Michigan Court of Appeals, after discussing the principles of freedom of contract and public policy, reversed the trial court's summary judgment in favor of defendant, and stated:

We believe the law in Michigan to be that, where goods or services used by a significant segment of the public can be obtained from only one source, or from limited sources on no more favorable terms, an unreasonable term in a contract for such goods or services will not be enforced as a matter of public policy.

In *Reed, supra* the plaintiff, a manufacturers representative, commenced an action for unpaid commissions after the defendant, manufacturer, terminated the contract between them. The Michigan Appeals Court found merit in plaintiff's contention that the contractual language relieving defendant of its obligation to pay commissions on orders not shipped before defendant's unilateral termination of the contract was unconscionable and should be denied enforcement. The Michigan Appeals Court reviewed the trial court's finding for summary judgment for defendant. The court stated:

Whether a contractual provision is substantively unreasonable or unconscionable depends on the circumstances—on the facts; as it has been said, on the 'commercial setting purpose and effect' of the provision. *Id.,* 38 Mich.App. at 356, 196 N.W.2d 487.

In *Commercial Movie Rental, supra,* the parties entered into an agreement which absolved plaintiff of liability for breach of any of the contract provisions. The defendant argued that the contract was void for lack of mutuality because it completed exempted plaintiff from all lia-

bility for breach. The court reviewed the parties' contract and applicable Michigan law, and found that plaintiff's promise to perform was "entirely illusory because under the unambiguous terms of the contract it drafted, [plaintiff] could never be held liable for the failure to perform those promises". *Id.* at 5. The court further stated that plaintiff's "illusory promise provided no consideration for the promises made by [defendant]. Under the doctrine of mutuality, then, the entire contract [was] void for lack of consideration." *Id.*

In the present action, this court finds Pacific's sixth affirmative defense has raised a significant issue that has not been thoroughly addressed by the parties. This court has found, *supra,* that the BSA authorizes Michigan Bell to charge back its actual uncollectibles, however, the agreement does not contain a provision enabling Pacific to obtain information concerning the parties responsible for the delinquent accounts. In this situation, how can Pacific legitimately attempt to recoup from its customers the amounts due and uncollectible by MBT.

Therefore, the court is reserving its opinion, pending oral argument, concerning this narrow issue.

## II.

### PACIFIC'S COUNTERCLAIM

On September 16, 1988, Pacific filed a two-count counterclaim against Michigan Bell. On October 3, 1988, Michigan Bell filed its answer and affirmative defenses to this counterclaim.

The gist of Pacific's first count alleges that the M.P.S.C. and Michigan Bell have violated Pacific's constitutional rights because of MBT's termination of Pacific's SPS program. Pacific alleges that its Sponsored Program Service was singled out and terminated based on format and content control.

This court has previously discussed the merits of this affirmation at I(E) of this Memorandum, Opinion and Order. As previously discussed, this court does not find a violation of Pacific's constitutional rights.

See, *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), *Carlin Communications, Inc. v. Southern Bell,* 802 F.2d 1352 (11th Cir. 1986), *Carlin Communications, Inc. v. Mountain States Telephone & Telegraph Co.,* 827 F.2d 1291 (9th Cir.1987), and *Network Communications v. Michigan Bell,* 703 F.Supp. 1267 (E.D.Mich.1988).

Therefore, Count I of Pacific's counterclaim is dismissed.

In Count II of its counterclaim, Pacific alleges that the Billing Service Agreement constitutes an impermissible revenue sharing agreement in violation of *United States v. Western Electric Co.,* 673 F.Supp. 525 (1987) and *United States v. Western Electric Co.,* 690 F.Supp. 22 (D.C.1988). As this court stated in I(C) of the above Memorandum Opinion and Order, it is reserving judgment on the merits of this issue pending oral argument. Therefore, the court reserves its opinion concerning Michigan Bell's summary judgment motion as it pertains to Count II of Pacific's counterclaim.

## CONCLUSION

In summation, this court finds that Pacific's first, second, fourth, and sixth affirmative defenses are meritless. Pacific's third and sixth affirmative defenses will be the subject of oral arguments, at a date to be set by the court. Furthermore, the Court will grant MBT's summary judgment motion as to Count I of Pacific's counterclaim, and reserve its opinion on MBT's summary judgment motion concerning Count II of Pacific's counterclaim, pending oral argument.

ACCORDINGLY, IT IS HEREBY ORDERED that Pacific's first, second, fourth and fifth affirmative defenses are without merit and are hereby dismissed,

IT IS FURTHER ORDERED that Pacific's third and sixth affirmative defenses are to be scheduled for oral argument, at a date and time to be set by the court,

IT IS FURTHER ORDERED that Michigan Bell's motion for summary judgment is GRANTED as to Count I of Pacific's counterclaim, and

The court reserves its opinion on Michigan Bell's motion for summary judgment concerning Count II of Pacific's counterclaim, pending oral argument, at a date and time to be set by the court.

SO ORDERED.