**WXON–TV, INC., a Michigan corporation, Plaintiff,**

**v.**

**A.C. NIELSEN COMPANY, a Delaware corporation, Defendant.**

No. 89–70632.

United States District Court,
E.D. Michigan, S.D.

Aug. 9, 1990.

Bruce Leitman, Bloomfield Hills, Mich., for plaintiff.

Marc E. Raven, Sidley & Austin, Chicago, Ill., for defendant.

MEMORANDUM ON
RECONSIDERATION

COHN, District Judge.

I.

On July 2, 1990, 740 F.Supp. 1261, the Court issued a Memorandum and Order in this contract case dismissing plaintiff WXON–TV's (WXON) claim for consequential damages arising out of defendant A.C. Nielsen's (Nielsen) failure to provide it accurate ratings information. The Court held, however, that WXON may have a claim for a refund of fees it had paid for the defective information if Nielsen failed to "use all reasonable efforts to provide [WXON] data of the highest quality practicable."

Both parties have moved for reconsideration. Nielsen argues that WXON's complaint should have been dismissed in its entirety because it never claimed any entitlement to liquidated damages under the contract. WXON moves for reconsideration on the grounds that the Court erred in declining to hold the contract unconscionable. In the alternative, WXON argues that the contract should be construed to allow it to proceed against Nielsen for liquidated damages. Although the July 2, 1990 order expressly recognized WXON's right to

claim such damages, on reflection the Court must concede that its reasoning on that point was not adequately explained. Some additional discussion is therefore warranted.

## II.

As explained in the Court's July 2, 1990 order, the ratings information subscription agreement between WXON and Nielsen contained an elaborate limitation of damages clause. Section D.5 of the agreement states in relevant part:

(a) NIELSEN MAKES NO WARRANTIES EXPRESS OR IMPLIED, CONCERNING THE DATA CONTAINED IN ITS ANALYSES. Nevertheless, Nielsen will use all reasonable efforts to provide Client with data of the highest quality practicable.

\* \* \* \* \* \*

(c) Responsibility for Errors. If any material errors, inaccuracies or omissions should occur in any NSI Analysis or data, it will be Nielsen's policy, where feasible, to furnish appropriate correction notices, but Nielsen shall not be liable in breach of contract or otherwise. In the event of errors, inaccuracies or omissions, Client expressly waives any claim against Nielsen. Nielsen and any person acting on its behalf shall not be liable for any loss, injury, or damage of any kind caused in whole or part either by its or his action or inaction, whether or not negligent, or by contingencies beyond Nielsen's control, in compiling any NSI Analysis or data or in delivering or communicating the same to the Client or others, or from the use of publication of the same by Client or others.

(d) Non–Performance. If Nielsen shall fail, for any reason, to furnish any Regular or Special Data Analysis, under or as required by this Agreement, Client will accept, in lieu thereof, and as Client's sole and exclusive remedy, a refund or credit in the amount paid for such Analysis and Nielsen's liability for such failure shall be limited to the said refund or credit.

(e) In no event shall Nielsen be liable for Client's lost profits, goodwill or any other special or consequential damages.

WXON argued in its brief in opposition to Nielsen's motion for summary judgment that this limitation of damages clause is unconscionable because it completely excuses Nielsen from any liability for nonperformance under the contract. The Court rejected that reasoning, stating that in the event of a breach of the agreement, WXON would be entitled to damages as stipulated in paragraph D.5(d). In its motion for reconsideration, WXON contends that the Court erred in this holding because paragraph D.5(d) grants a remedy only for Nielsen's complete failure to furnish any ratings information whatever. Here, Nielsen furnished the ratings information; WXON's complaint is that the information was inaccurate. Accordingly, paragraph D.5(c) would apply, rather than D.5(d). WXON concludes that since paragraph D.5(c) contains an absolute disclaimer of liability for any errors, inaccuracies, or omissions in the data, it is completely without remedy.

This was not the way that the Court interpreted the agreement. Paragraph D.5(a) states that "Nielsen will use all reasonable efforts to provide the Client with data of the highest quality practicable." This is the essence of Nielsen's undertaking under the agreement. Moreover, this language may be read consistently with paragraph D.5(c). It is possible for Nielsen to use "all reasonable efforts" to collect data "of the highest quality practicable" and nonetheless make material errors or omissions. The fact that paragraph D.5(c) disclaims liability for such errors does not necessarily mean that it also disclaims liability for the explicit obligation undertaken in paragraph D.5(a). These responsibilities are separate and distinct. Paragraph D.5(a) requires only that Nielsen make its best efforts. Paragraph D.5(c) speaks in terms of results. These contractual terms, taken in combination, can reasonably be read to guaranty that Nielsen will use its best efforts, but not necessarily guaranty any specific result.

Under WXON's proposed reading, the limitation contained in paragraph D.5(c) completely nullifies the express obligation undertaken in paragraph D.5(a). This would render the paragraph D.5 contradictory and nonsensical. The Court is loath to adopt a reading of a contract which renders operative language incoherent or nugatory. In addition, the Court will, where fairly possible, avoid reading a contract in such a way as to render it partially or completely unconscionable.

The Court also reads paragraph D.5(d) to provide WXON a liquidated damages remedy for a breach of the best efforts obligation of paragraph D.5(a). WXON argues that paragraph D.5(d) is irrelevant here because it applies only if "Nielsen should fail, for any reason, to *furnish* any Regular or Special Data Analysis...." It argues that since Nielsen furnished some data, albeit inaccurate, the damages remedy does not apply. The Court does not agree. WXON selectively quotes to the Court the first clause of paragraph D.5(d). In its entirety, it reads: "If Nielsen shall fail, for any reason, to furnish any Regular or Special Data Analysis, *under or as required by this Agreement,* Client will accept in lieu thereof, and a Client's sole and exclusive remedy, a refund or credit in the amount paid ..." [emphasis added]. The Court reads the phrase "under or as required by this Agreement" as modifying the verb "furnish." It is not enough for Nielsen to merely furnish meaningless Data Analysis. The data must also be "as required by this Agreement" and paragraph D.5(a) of the agreement requires the data to be "of the highest quality practicable." Thus, the Court reads paragraph D.5(d) as furnishing WXON a liquidated damages remedy for any failure of Nielsen to reasonably comply with its obligations under paragraph D.5(a). The case must proceed to trial on the question of whether Nielsen breached that obligation.

### III.

■ WXON raises two additional objections to the Court's July 2, 1990 order, neither of which merit extended discussion. First, WXON takes issue with the Court's finding that it was not confronted with a "take-it-or-leave-it" situation in negotiation of the ratings agreement with Nielsen. WXON explains that after it had successfully exacted from Nielsen a price reduction and an early termination clause, a Nielsen executive told WXON's owner that "this [is] the best I can do for you." From this, WXON allegedly concluded that it was faced with a take-to-or-leave-it offer. This argument is meritless. The common-sense understanding of the phrase "take-it-or-leave-it" is that the terms of a contract as offered are completely non-negotiable. In this case, the parties simply reached impasse after extensive negotiations had taken place and, in fact, substantial concessions made. To cite this as evidence of procedural unconscionability is a poorly taken argument.

■ Second, WXON argues that the fact that it went without ratings information on at least three occasions since 1968 should not be construed to suggest that such information is not currently essential for the operation of a commercial television station. It notes that in the past such information was not as critical in the marketplace and that the station has grown substantially and its needs have changed. This may well be so. However, the Court cited this fact as only one consideration among many in discussing how this case differed from *Allen v. Michigan Bell Telephone Co.,* 18 Mich.App. 632, 171 N.W.2d 689 (1969). Even if the Court were to disregard this fact entirely, it still could not be said that the agreement, as construed, was procedurally unconscionable.

### IV.

■ Finally, Nielsen moves the Court to dismiss the remainder of count I on the grounds that WXON never claimed an entitlement to liquidated damages under paragraph D.5(d) of the agreement. Although undoubtedly true, the Court would ascribe this failure more to WXON's inordinate attention to its consequential damages claim and its wish to avoid the inherent danger of arguments in the alternative.

WXON's claim for liquidated damages could be fairly inferred from the four corners of the case and the Court is reluctant to deny it an opportunity to claim such relief because of a strategic misstep by counsel. Accordingly, WXON may amend its complaint to expressly make a claim for liquidated damages under section D.5(d) of the service agreement within ten days.

Nielsen makes the complementary argument that because it furnished "usable" ratings information, WXON is precluded from claiming liquidated damages. The Court rejects that argument for the reasons stated in section II of this memorandum. The issue is not whether the ratings data was "usable" but whether it was "of the highest quality practicable." There is a genuine issue of material fact as to this question which must ultimately be resolved by a jury.